IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
ST. LOUIS DIVISION

| | | |
|---|---|---|
| ROCHESTER LABORERS PENSION FUND, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | CIVIL ACTION NO. 10-1380-CDP |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE INTERNATIONAL UNION OF |
| MONSANTO COMPANY, HUGH M. GRANT, TERRELL K. CREWS and CARL M. CASALE, | ) ) ) ) | OPERATING ENGINEERS PENSION FUND TO BE APPOINTED LEAD PLAINTIFF; AND TO APPROVE PROPOSED LEAD PLAINTIFF'S |
| Defendants. | ) ) ) | CHOICE OF COUNSEL |

## I. INTRODUCTION

The International Union of Operating Engineers Pension Fund (the "Operating Engineers" or "Movant") respectfully submits this Memorandum of Law in support of its Motion for Appointment as Lead Plaintiff and for Approval of its Selection of Lead and Liaison Counsel. With estimated losses of approximately $482,000 arising from its purchase of the common stock of Monsanto Company ("Monsanto" or the "Company") between January 7, 2009 and May 27, 2010 (the "Class Period"), the Operating Engineers has the "largest financial interest" in this putative class action, and otherwise meet the requirements of the Private Securities Litigation Reform Act ("PSLRA"), 109 Stat. 737.

As an institutional investor, the Operating Engineers is precisely the type of investor that Congress had in mind when it passed the PSLRA in 1995, and is uniquely qualified to serve as lead plaintiff on behalf of the class (the "Class") proposed in the above-captioned action. The PSLRA's legislative history reflects that it was intended "to increase the likelihood that institutional investors will serve as lead plaintiffs" because, *inter alia*, such investors are presumed to "represent the interests of the plaintiff class more effectively than class members with small amounts at stake." H.R. Rep. No. 104-369, at 34 (1995); *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 321 (2007) (PSLRA "aimed to increase the likelihood that institutional investors – parties more likely to balance the interests of the class with the long-term interests of the company – would serve as lead plaintiffs"). Thus, appointment of the Operating Engineers as Lead Plaintiff in this securities action is appropriate, not only because it meets all the prerequisites of the PSLRA, but also because such an appointment will fulfill the goals of

that statutory scheme.

As demonstrated below and pursuant to the PSLRA, Movant is the "most adequate" plaintiff to represent those who purchased or otherwise acquired Monsanto's securities during the Class Period and it should be appointed as Lead Plaintiff. In addition, Movant has selected and retained Shepherd Finkelman Miller & Shah, LLP ("SFMS") to serve as Lead Counsel and Holland, Groves, Schneller & Stolze, LLC ("HGSS") to serve as Liaison Counsel, law firms with extensive experience in prosecuting securities fraud and other complex litigation matters. Accordingly, the Operating Engineers' selection of counsel should be approved.

## II.    SUMMARY OF ALLEGATIONS[1]

This action is brought on behalf of those persons or entities that purchased or otherwise acquired the common stock of Monsanto during the Class Period. The Complaint commencing this action alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. §§ 78(j)(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5) against Monsanto, as well as the following individuals who occupied senior management positions during the Class Period: Defendant, Hugh M. Grant ("Grant"), who served as Monsanto's Chairman, President and Chief Executive Officer ("CEO"); Defendant, Terrell K. Crews ("Crews"), who was the Company's Executive Vice President and Chief Financial Officer ("CFO"); and Defendant, Carl M. Casale ("Casale"), who was Monsanto's Executive Vice President of Strategy and Operations.

Monsanto, a Delaware corporation headquartered in St. Louis, Missouri, is a provider of

---

[1] These facts are based upon the Complaint filed in this action on July 29, 2010 (the "Complaint").

agricultural products, which operates in two segments: Seeds and Genomics, and Agricultural Productivity. Complaint, ¶23. The Agricultural Productivity segment includes lawn-and-garden products such as Roundup®, which is an herbicide containing glyphosate. *Id.*, ¶24. In early-2009, demand for Roundup greatly decreased due to the influx of cheaper generic products into the market as well as other factors, which left the Company unable to reach the Company's growth targets. *Id.*, ¶25.

Throughout the Class Period, Monsanto touted its earnings, while slowly revealing the true state of its financial affairs through partial disclosures. On January 7, 2009, Monsanto announced that it was raising full-year earnings-per-share guidance, as well as its fiscal year 2009 guidance, for Roundup and other glyphosate-based herbicides. *Id.*, ¶27. Also, in January 2009, when asked whether Monsanto expected that farmers may be buying less herbicide in 2009, Crews responded by saying that the U.S. Roundup business is still strong and largely driven by Monsanto's branded business. *Id.*, ¶28. Again, on February 18, 2009, the Company touted its Roundup business, when Casale said that Monsanto has a "new, higher sustainable level that we'll be able to enjoy as we move into this environment in the future." *Id.*, ¶31.

Slowly, the Company revealed problems with meeting its expected financial projections. For example, in May 2009, Defendants announced that stronger-than-expected competition in the herbicide business would push fiscal-year results to the low end of the earnings forecast. *Id.*, ¶35. Monsanto also stated that its Roundup and glyphosate business would likely generate about $2 billion in gross profit for 2009, down from its previous forecast of $2.4 billion. *See id.*, ¶35.

Then, in June 2009, Monsanto announced that its future gross profits from its Roundup business would drop by half. *Id.*, ¶38. Despite this news, Monsanto continued to downplay the

effect of the problems with the Roundup business and its impact on future business for Monsanto. *Id.*, ¶39. On September 10, 2009, the Company lowered its 2009 revenue guidance, announcing that gross profit for its Agricultural Productivity segment was expected to be lower than the anticipated $650-750 million. *Id.*, ¶41. In May 2010, Casale revealed that the Company now expected its gross profit for Roundup to be in the range of $250-300 million. *Id.*, ¶44. That same month, Monsanto shocked investors by announcing that it was "dramatically" repositioning its Roundup business, lowering its full-year 2010 guidance, and lowering its free cash flow guidance. *Id.*, ¶45. Further, the Company announced that its guidance for Roundup and other glysophate-based products was now $50 to 200 million, markedly down from the previous months's prediction of $600 million. *Id.*

As alleged in the Complaint, the adverse impact of Defendants' partial disclosures of the Company's condition was significant. In response to the Class Period-ending disclosure, the Company's stock dropped from a Class Period intraday high of $93.35 on May 20, 2009 to close at $50.27 by the end of the Class Period, which represents a drop of approximately 46%. *Id.*, ¶26.

The Complaint alleges that Defendants' Class Period statements were materially false and misleading because, *inter alia*, they failed to disclose that demand for the Company's herbicide products was substantially declining, as competition from generic glyphosate products was causing a collapse in the prices of glyphosate products. Complaint, ¶48. In addition, the Complaint chronicles the extensive insider sales of Grant, during the Class Period, amounting to proceeds in excess of $11 million. Complaint, ¶50.

## III. ARGUMENT

### A. Movant Is The Most Adequate Applicant And Should Be Appointed Lead Plaintiff

#### 1. Compliance With The Notice And Filing Provisions Of The PSLRA

The PSLRA establishes a procedure that governs the appointment of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§78u-4(a)(1) and (a)(3)(B)(I). *See generally Mas v. KV Pharmaceutical Company, et al.*, Nos. 08-cv-1859, 2009 WL 1011506, at *1-2 (E.D. Mo. April 28, 2009) (discussing the PSLRA's "three-step process for identifying the lead plaintiff"); *Western Washington Laborers-Employers Pension Trust v. Panera Bread Co., et al.*, No. 08-cv-00120, 2008 WL 2559431, at *1 (E.D. Mo. June 23, 2008) (same), *Boyd v. NovaStar Financial, Inc., et al.*, No. 07-0139-cv-W-ODS, 2007 WL 2026130, at *1 (W.D. Mo. July 9, 2007) (same). Pursuant to this procedure, the plaintiff who files the initial action must publish a notice to the class within twenty (20) days of filing the action. This notice must inform class members of their right to file a motion for appointment as lead plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(A)(I). Within sixty (60) days of publishing the notice, any person or group of persons who are members of the proposed class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. *See* 15 U.S.C. §§78u-4(a)(3)(A) and (B).

Here, notice of the filing of this action was published on July 29, 2010, following the filing of the Complaint. *See* Exhibit "A" to the Declaration of Eric D. Holland ("Holland Dec.")

submitted herewith.[2] Accordingly, the time period in which Class members may move to be appointed Lead Plaintiff in this case expires on September 27, 2010. *See* 15 U.S.C. §78u-4(a)(3)(A) and (B). Movant now timely moves this Court to be appointed Lead Plaintiff on behalf of all members of the proposed Class.

The Certification of the Operating Engineers, which is attached to the Holland Dec. as Exhibit "B," states that a representative of the Operating Engineers, duly authorized to prosecute these claims, has reviewed the allegations of the Complaint and that the Operating Engineers is willing to serve as a representative on behalf of the Class. In addition, the Operating Engineers has selected and retained competent counsel to represent it and the Class. The firm resumes for SFMS and HGSS are collectively attached as Exhibit "D" to the Holland Dec. Accordingly, Movant has satisfied the individual requirements of 15 U.S.C. §78u-4(a)(3)(B) and is entitled to have its Motion for Appointment as Lead Plaintiff granted, and its selection of SFMS as Lead Counsel and HGSS as Liaison Counsel approved by the Court.

### 2. The Operating Engineers Suffered The Largest Loss Of Any Other Movant

The PSLRA provides that, within ninety (90) days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the Court determines to be most capable of adequately

---

[2] The notice was issued over *Business Wire*, which courts and commentators have recognized as meeting the PSLRA's definition of a "widely-circulated national business-oriented publication or wire service." 15 U.S.C. § 78u-4(a)(3)(A)(I); *see, e.g., KV Pharmaceutical Company, et al.*, 2009 WL 1011506, at *1-2; *Panera Bread Co.*, 2008 WL 2559431, at *1, Moore, *Moore's Federal Practice* § 23.191[2] at 23-613 (3rd ed.2009) ("[A] press release on *Business Wire*, which disseminates the information electronically to the news media, on-line services, and computer databases available to the investment community, satisfies the early notice requirement").

representing the interests of class members. *See* 15 U.S.C. §78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this [Act] is the person or group of persons that
>
>> (aa) has either filed the complaint or made a motion in response to a notice...;
>>
>> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>>
>> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii). *See KV Pharmaceutical Company*, 2009 WL 1011506, at *1-2; *Panera Bread Co.*, 2008 WL 2559431, at *1 (same); and *NovaStar Financial, Inc.*, 2007 WL 2026130, at *1 (same).

During the Class Period, the Operating Engineers purchased Monsanto common stock and suffered significant losses. Specifically, as reflected in its Certification (Exhibit "B"), the Operating Engineers purchased a total of 31,546 shares of the Company's common stock during the Class Period and, after subtracting for the value of shares retained, has suffered estimated losses in excess of $482,000,[3] which demonstrates the Operating Engineers' financial interest in the outcome of this action. To the best of Movant's knowledge, there are no other applicants

---

[3] Under the Exchange Act, losses are calculated as the difference between the purchase or sale price paid and the mean trading price over a ninety (90) day period beginning after the close of the class period. *See* 15 U.S.C. § 78u-4(e)(1). Here, the ninety (90) day period ended on August 26, 2010, and the mean or average closing price for Monsanto common stock from May 28, 2010 through August 26, 2010 is $53.43 per share. A chart reflecting the calculation of the Operating Engineers' losses is attached as Exhibit "C" to the Holland Dec.

seeking appointment as lead plaintiff that have a larger financial interest. Therefore, the Operating Engineers satisfies all of the PSLRA's prerequisites for appointment as lead plaintiff in this action, and should be appointed as Lead Plaintiff pursuant to 15 U.S.C. §78u-4 (a)(3)(B).

### 3. No Grounds Exist To Challenge The Operating Engineers' Adequacy As Lead Plaintiff

According to 15 U.S.C. §78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." In selecting a lead plaintiff, it is well established that the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a). *See KV Pharmaceutical Company*, 2009 WL 1011506, at *2; *Minneapolis Firefighters' Relief Association v. MEMC Electronic Materials, Inc.*, Nos. 08-cv-1411, 08-cv-1570, 2008 WL 5233106, at *1 (E.D. Mo. Dec. 12, 2008). The Operating Engineers should be appointed Lead Plaintiff because it satisfies the typicality and adequacy requirements of Rule 23.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical – but not identical – of those of the class. *See KV Pharmaceutical Company*, 2009 WL 1011506, at *2 (citation omitted)("typicality requirement of Rule 23(a)(3) is satisfied when each class member makes similar legal arguments to prove the defendant's liability"); *MEMC Electronic Materials, Inc.*, 2008 WL 5233106, at *2 (typicality satisfied where class consists of those who purchased company's securities during the class period at inflated prices and suffered damages.) Here, the Operating Engineers satisfies this requirement because, just like all other Class members, it purchased or otherwise acquired Monsanto common stock during the Class Period; the prices at which those purchases were made were artificially inflated because of Defendants'

materially false and misleading statements and/or omissions; and it suffered damages as a result of Defendants' conduct. Thus, the Operating Engineers' claims arise out of the same course of events as those of other Class members and are typical.

Under Rule 23(a)(4), the representative parties must also "fairly and adequately protect the interests of the class." This Court has found the adequacy requirement satisfied where "class counsel is qualified, experienced, and generally able to conduct the litigation; there is no antagonism between the interests of the proposed lead plaintiff and the other members of the class; and the proposed lead plaintiff has sufficient interest in the outcome to ensure vigorous advocacy." *KV Pharmaceutical Company*, 2009 WL 1011506, at *3 (citation omitted); *MEMC Electronic Materials, Inc.*, 2008 WL 5233106, at *2 (citation omitted).

Here, the Operating Engineers is an adequate representative of the Class. Like the Class, the Operating Engineers has sustained substantial damages as a result of its purchase of Monsanto common stock and would benefit from the same relief. Furthermore, there is no evidence of any antagonism between the Operating Engineers and the Class. In addition, as shown below, Movant's proposed Lead Counsel are highly qualified, experienced and able to conduct this complex litigation in a professional manner. Having suffered significant losses, the Operating Engineers will also be motivated to vigorously prosecute this action. Thus, Movant satisfies the typicality and adequacy requirements of Rule 23 for the purposes of this motion.

**B.    The Court Should Approve The Operating Engineers' Choice Of Counsel**

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), Movant shall, subject to Court approval, select and retain counsel to represent the class it seeks to represent. The Operating Engineers has selected SFMS to serve as Lead Counsel in this case, and HGSS to serve as Liaison Counsel.

-10-

Both SFMS and HGSS have substantial experience in the prosecution of shareholder, securities and other complex litigation, and have the resources necessary to efficiently conduct this litigation. *See KV Pharmaceutical*, 2009 WL 1011506, at *3 (approving plaintiff's selection of counsel finding that the firm had adequate experience litigating securities cases and had adequate resources to manage the litigation); *Tice v. Novastar Financial, Inc.*, 2004 WL 1895180, at *7 (W.D. Mo. August 3, 2004)(lead plaintiffs are "free to choose whomever they wish to represent them locally.") Accordingly, the Court should approve the Operating Engineers' selection of Lead Counsel and Liaison Counsel.

## IV. CONCLUSION

For all of the foregoing reasons, Movant respectfully requests that the Court: (i) appoint the International Union of Operating Engineers Pension Fund as Lead Plaintiff in this action and (ii) approve the Movant's selection of Shepherd, Finkelman, Miller & Shah, LLP to serve as Lead Counsel and Holland, Groves, Schneller & Stolze, LLC to serve as Liaison Counsel.

Dated: September 27, 2010

Respectfully submitted,

HOLLAND, GROVES, SCHNELLER
& STOLZE, LLC

By: /s/Eric D. Holland
Eric D. Holland (Missouri Bar No. 39935)
Gerard B. Schneller (Missouri Bar No. 38098)
300 N. Tucker, Suite 801
St. Louis, MO 63101
Telephone: (314) 241-8111
Facsimile: (314) 241-5554
eholland@allfela.com
gschneller@allfela.com

James E. Miller
Patrick A. Klingman
Karen M. Leser-Grenon
SHEPHERD, FINKELMAN, MILLER &
SHAH, LLP
65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100
Facsimile: (860) 526-1120
jmiller@sfmslaw.com
pklingman@sfmslaw.com
kleser@sfmslaw.com

James C. Shah
Eric L. Young
SHEPHERD, FINKELMAN, MILLER &
SHAH, LLP
35 East State Street
Media, PA 19063
Telephone: (610) 891-9880
Facsimile: (610) 891-9883
jshah@sfmslaw.com
eyoung@sfmslaw.com

*Attorneys for Movant, the International Union of Operating Engineers Pension Fund*

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2010 I filed the foregoing Memorandum of law in Support of the Motion of The International Union of Operating Engineers pension Fund to be Appointed Lead Plaintiff; and to Approve Proposed Lead Plaintiff's Choice of Counsel, with the Clerk of the court using the court's CM/ECF System which will send notification of such filing to the following:

John M. Parisi
Lynn R. Johnson
Douglas R. Bradley
SHAMBERG, JOHNSON & BERGMAN, CHTD.
2600 Grand Boulevard, Suite 550
Kansas City, MO 64108

Brian O. O'Mara
ROBBINS GELLER RUDMAN & DOWD LLP
655 W. Broadway, Suite 1900
San Diego, CA 92101

Stephen H. Rovak
Justine N. Margolis
SONNENSCHEIN NATH & ROSENTHANL, LLP
One Metropolitan Square, Suite 3000
St. Louis, MO 63102

Ben M. Germana
Eric M. Roth
Jonathan R. LaChapelle
WACHTELL & LIPTON
51 w. 52ND Street
New York, NY 10019-6188

and served via U.S. Mail, postage prepaid, upon the following:

David J. George
Stuart A. Davidson
James L. Davidson
ROBBINS GELLER RUDMAN & DOWD LLP
120 E. Palmetto Park Road, Suite 500
Boca Raton, FL 33432

Samuel H. Rudman
ROBBINS GELLER RUDMAN & DOWD LLP
58 South Service Road, Suite 200
Melville, NY 11747

                                             s/ Eric D. Holland
                                             Eric D. Holland (39935)